UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TONY AND MII'S, INC., TONY THANGSONGCHAROEN, AND SOMNUEK THANGSONGCHAROEN | § § § § | |
| Plaintiffs, | § § | Case No. 3:17-cv-609-B |
| v. | § § | |
| THE UNITED STATES OF AMERICA, | § § | |
| Defendant. | § | |

### Motion for Sanctions for Mr. Smith's and Ms. Yepuri's Knowingly False Misrepresentations to the Court

The government attorneys, Mr. Smith and Ms. Yepuri, have made outright—and provably—false representations to the Court; they should be sanctioned.[1] They have alleged that "[Undersigned counsel] *stated in writing* that his assistant **eavesdropped** on a conversation between counsel for the United States and the IRS employee during a [deposition] break." (United States' Emergency Mot. For Prot. Order, Doc. No. 38, p. 8 (emphasis added)). Mr. Smith and Ms. Yepuri went on to state that "[Undersigned counsel's] assistant eavesdropped on a conversation that was attorney-client privileged . . . ." *Id.* They have deliberately and knowingly lied to this Court in an attempt to create a false picture that was designed to inflame the Court into ordering relief that they were seeking.[2]

---

[1] Note that Plaintiffs will respond to the government's substantive Motion for Protective Order in accordance with the Court's scheduling order. Plaintiffs here only address the referenced outright false representations contained in the government's filing.

[2] The government attorneys also misrepresented to this Court that undersigned counsel "stated in writing . . . that counsel for the United States did not disclose [the IRS employee's statement that she had testified untruthfully] and [that the DOJ attorney] instructed the IRS employee to continue to provide false testimony." (Doc. 38, p. 8). That is an absolutely false misrepresentation. Undersigned counsel absolutely never made such an allegation, and as Exhibit C hereto demonstrates, undersigned counsel actually specifically stated that "I do not think that either of you [government attorneys] would withhold any document or advise or assist a witness in falsely testifying." (Exh. C). Undersigned counsel also stated, "And with respect to Crystal's testimony, I in no way make any allegation that Moha [Ms. Yepuri] did anything wrong." (Exh. C). These statements were made by undersigned counsel on December 6, 2018. Contrary to Ms. Yepuri's outright false representation to this Court in her Motion for a Protective Order, undersigned counsel actually specifically stated that he did *not* allege that she had done anything improper. That, of course, has now changed given her knowingly false representations to this Court that are the subject of this Motion.

These misrepresentations are beyond mere exaggerations of fact or an advocate's spin on the law. They are outright, patently false representations of facts to the Court—facts that the attorneys had personal knowledge were not true. They violated their obligations under Rule 11 and to this Court.

Following the government's motion for a protective order containing the false statements above, undersigned counsel sent the following email to government counsel. I was understandably upset by the false representations and offered government counsel an opportunity to correct those false statements:

> Curtis,
>
> First of all, I am frankly furious that you have accused someone in my office of "eavesdropping" in your motion. Your allegation is an outright false representation to the court, unbecoming of the Department of Justice or our profession. You and Moha are both aware of exactly what happened—we discussed this in depth, and the manner in which Ms. Ferguson stepped out of the deposition room with Moha and began talking about 5 feet away from (and directly in front of) my assistant who was sitting at her reception desk in the front of our office. She made no deliberate attempt to listen or "eavesdrop." Nor did I ever state this in writing or orally, as you represented to the court. The conversation was literally held right in front of her, as I previously informed you and Moha during our discussion on Thursday, and at normal speaking levels—there was not an opportunity for her to leave the room, or quite frankly, to *not* hear the short conversation. As you should know, there is no attorney-client privilege where there is no reasonable expectation of privacy during the conversation. I have lost all respect at this point, and have frankly never in my entire career seen an attorney make such an outright false statement to a court.
>
> As a professional courtesy, I will give you the opportunity to fix the false statement.
>
> Regarding Ms. Bonfield's deposition, yes, I am fine to conduct that as previously scheduled.
>
> Jason

(Exh. A, Email from Jason Freeman to Curtis Smith, December 8, 2018).

Notably, the government, in its motion for protective order, failed to produce a copy of the "written" statement (that it references) by undersigned counsel allegedly stating that my assistant "eavesdropped." <u>That is because no such written statement was ever made</u>—nor was any such

statement ever made orally.  Below is the email I sent to government counsel, in its entirety, raising

the issue in the first place:

> Curtis,
>
> I've got some concerns about the government's discovery productions.  We just received new documents (about 1,100 documents) yesterday that contain a substantial amount of information that would have been needed to conduct a full deposition of Patty Hall and Crystal Ferguson.  Were these the documents that the government had previously lost—or are there still missing/deleted emails and documents?  We have not completed our initial review yet, but I see quite clearly that this seizure went up to National and that they pulled the plug on the entire perishable goods seizure on March 2, 2015, yet it subsequently went forward.  I don't believe that's consistent with Crystal Ferguson's testimony, but it is also something I would have wanted to explore in more depth with her and that we were never notified of.  There are also references to missing ICS Histories and filling in ICS Histories after the fact, which appears to confirm the issue I raised about my suspicions of missing or manufactured ICS History entries.
>
> We also learned in Crystal's deposition that she had been using her personal, non-government issued phone to text about the case and that she sent information related to a then-non-public case (Mii's) to others in the IRS that were not authorized to receive such information about a taxpayer (i.e., protected information).  Does your office intend to investigate these improprieties?  I believe that we have a right to know this.  I understand that DOJ will likely be reluctant to take any steps to initiate a criminal investigation if it would harm an important government witness, but these appear to be pretty serious violations.
>
> This is also particularly concerning because Crystal testified that she had not taken any steps to safeguard her text messages, and that she had not ever been asked to produce them.  As you know, I have specifically requested all text messages in our discovery requests.  Please update me on this and on what steps are being taken—and have been taken—to secure such text messages from all relevant persons.  I am very concerned about this – the combination of this information going missing and the internal IRS emails that were previously considered missing leads me to seriously question whether all of the relevant documents have been produced.
>
> Finally, I have one other very serious concern.  During Ms. Ferguson's deposition, she stepped out of the room with her DOJ attorney.  They were in the same room as my assistant and did not leave that room, and Ms. Ferguson intimated to her attorney that she had not told the truth in her deposition.  If the government is aware of any false testimony whatsoever—or testimony that was not fully forthcoming, as is required under the oath that she took—I believe that it has an obligation to inform me and to take steps to correct that.  Would you please advise on this?
>
> Thanks,
>
> Jason

3

(Exh. B, Email from Jason B. Freeman to Curtis Smith, December 6, 2018).  Following this email, I had a phone conversation with both Curtis Smith and Moha Yepuri.  During that phone conversation we specifically discussed the colloquy at issue between Ms. Yepuri and Ms. Ferguson.  Ms. Yepuri has personal knowledge of exactly where and how her conversation with Ms. Ferguson took place.  Her testimonial representations to the Court here are, therefore, inexcusable.  We specifically discussed how Ms. Ferguson had initiated that conversation **about 5 feet away from (and in front of) my receptionist in the open <u>in the front lobby</u> of my office without taking any steps whatsoever to safeguard the conversation**.  We specifically discussed that my receptionist had not made any particular attempt to overhear the conversation—instead that conversation was held in a manner that she could not avoid.

   It is black letter law that a conversation is not a privileged conversation if it is held in a manner that does not give rise to a reasonable expectation of privacy.  For whatever reason, Ms. Yepuri failed to advise her client of this, and engaged in a very short conversation in which her client indicated that she had not been truthful in the deposition.  Under these circumstances, there was no attorney-client privileged conversation.[3]  More to the point, the government's representation to this Court that "[undersigned counsel] stated in writing that his assistant eavesdropped on a conversation" is so untruthful—and made with such utter disregard for the truth, and in such a manner that was designed to inflame the Court—that it should be sanctioned.  It completely fails to uphold the ethics to which any attorney should adhere, and is particularly egregious because it was made by an attorney who carries the imprimatur of the U.S. Department of Justice.

---

[3] In addition, Ms. Yepuri is not Ms. Ferguson's attorney.  If she now takes the position that she is—as her filing appears to imply—then it appears that she may now have a conflict of interest.  At any rate, her conversation was one between a witness and an attorney, not between an attorney and her client.

Following the conversation with Ms. Yepuri and Mr. Smith, I sent a friendly follow-up email, frankly because I was worried that they may have interpreted the serious concerns that I had raised (in Exhibit B) as somehow being aimed at them personally, rather than at the IRS. I took pains to clarify this for them in my phone conversation with them. I also took what I felt was a very professional and courteous step to assure them, in writing, that I did not mean any personal attack on them and to confirm the oral statements I had made to them in this regard on our phone call. The contents of that email are set forth below:

Curtis,

In case there is any question with respect to my email below, I want to be absolutely clear that I intended no allegation against either you or Moha. I have the utmost respect for both of you—I truly do. I do not think that either of you would withhold any document or advise or assist a witness in falsely testifying. My concerns are lodged at the IRS or US government, and whether it maintained or produced all of the relevant documents to you—not whether you produced to me everything that was given to you. If key documents are missing from the IRS's files, you should understand that I would be very upset about that. And with respect to Crystal's testimony, I in no way make any allegation that Moha did anything wrong. Just so you know, I have actually represented a client that was not truthful in a government investigation. It placed me in a very difficult position, but I ultimately had an ethical obligation to correct it. I did not do it at the moment that the mis-truth was made, but did so later—frankly because I needed time to figure out how to satisfy all of my competing ethical obligations. I say this because I understand first-hand the potential ethical quandaries that type of situation can present. It sounds like, from your understanding, that you are not aware of Ms. Ferguson lying. All I am saying is that if she did, and she did not correct it during her subsequent testimony, then—*if* you know of it—I think you have an obligation to somehow address it. I think you would rightfully ask the same of me, and I think we all owe that to the system that we are a part of, whether it helps or hurts our respective clients. I have to raise the issue, and I have to ask the question—but I do <u>not</u> aim any criticism or allegation whatsoever at either of you.

Understand that you are my point of contact, and I have no one else on your end to voice these concerns to—but please do not confuse my serious concerns with anger at you.

I think you are both two of the best attorneys/people I have come across. I have a job to do, and it will mean that I am tough on the government and ask difficult questions. Those will never be aimed at you, only your client.

I hope this helps to clarify the scope of my concerns.

Jason

(Exh. C, Email from Jason Freeman to Curtis Smith and Moha Yepuri, December 6, 2018).

Following this email, the government filed its Motion for Protective Order the next day, making the false representations to the Court that are at issue. There was no other "writing." In other words, the Court now has the full array of written correspondence regarding this issue. However, **the Court should specifically request that the government attorneys produce the "writing" that they cite.** ("Mr. Freeman stated in writing that his assistant eavesdropped on a conversation"). There is **not** one.

While I am reluctant to request sanctions against an attorney—particularly a government attorney—sanctions are absolutely necessary in this case. These false representations were made to impugn undersigned counsel and his law firm. Government attorneys are under a particular obligation to be truthful. Their representations carry even greater weight and potential ability to harm. They threaten credibility of opposing counsel. But more importantly, they threaten the credibility of the esteemed office and institution that they have the **privilege** and responsibility to represent. And perhaps most importantly, left un-redressed, such "misrepresentation[s] carr[y] with [them] the ability to destroy the Court's status as a hall of justice." *United States v. Price*, 2008 WL 5049295, at *4 (N.D. Tex. Nov. 25, 2008) (J. Boyle).

I provided the government attorneys with an opportunity to fix their known and false representations. As of this morning, the government attorneys first indicated that my office should simply file its motion, indicating no intention to correct the statements. The government attorneys subsequently called me back and indicated that they acknowledge that they filed false statements and now intend to correct several statements, but they have refused to take the steps requested and necessary to rectify the situation, including falling on the sword by informing the court that there was, in fact, no "eavesdropping" (Ms. Yepuri remained adamant that there was "eavesdropping") and that

their filings were knowingly false—instead, they indicated they would merely change the language in a new filing, which is simply not an acceptable resolution. On the basis of their original representations, the Court ordered a stay of five scheduled depositions, which has caused an enormous scheduling difficulty (and cost) for undersigned counsel—who is representing, and paying the costs for, plaintiffs that are entirely destitute, and who has potentially 10 other depositions in another case during the next month, plus obligations two days a week as a law professor at SMU. The government attorneys were aware of this and sought to take advantage of it. This Court should impose sanctions, and award costs to the plaintiffs and undersigned counsel.[4]

## Rule 11 and Related Authority

Rule 11 of the Federal Rules of Civil Procedure governs sanctions in this context. That Rule provides, in relevant part, as follows:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) **it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation**;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) **the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery**; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.
>
> (c) Sanctions.
>
> (1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for

---

[4] The government attorneys also failed to raise this issue during any conference with undersigned counsel. They never gave any indication of raising such an issue with the Court.

the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

   (2) *Motion for Sanctions.* A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

FRCP 11 (emphasis added).

   Federal courts also have the inherent authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. *United States v. Price*, No. CIV.A.3:08-CR-0268-B, 2008 WL 5049295, at *3 (N.D. Tex. Nov. 25, 2008) (J. Boyle) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43-5 (1991)). Toward that end, federal courts are empowered to sanction bad faith conduct occurring throughout a case. *Id.* (citing *Chambers* at 45). It goes without saying that lying to the Court constitutes bad faith. *Id.* (citing *Chambers* at 42, 46, 50-1 (upholding the district court's use of its inherent authority to sanction bad faith conduct which included "misleading and lying to the court")).

   As this Court has recognized, "Dishonesty towards the tribunal is among the most egregious of sanctionable conduct [] committed by lawyers." *United States v. Price*, 2008 WL 5049295, at *3 (N.D. Tex. Nov. 25, 2008). Indeed, as this Court has expressed:

   The serious nature of such conduct is exemplified in the American Bar Association's Model Rules of Professional Conduct which command that "a lawyer shall not knowingly ... make a false statement of law or fact to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer ...." MODEL RULES OF PROF'L CONDUCT R. 3.3(a)(1); see also TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. 3.03(a)(1) ("A lawyer shall not knowingly ... make a false statement of material fact or law to a tribunal").

*United States v. Price*, No. CIV.A.3:08-CR-0268-B, 2008 WL 5049295, at *3 (N.D. Tex. Nov. 25, 2008) (J. Boyle).

Here, the government attorneys made specific factual allegations that were knowingly false. They made those allegations with personal knowledge. The factual allegations at issue were not based upon representations from a witness or other person; they were, instead, made based upon the government attorneys' very own direct knowledge. They put their credibility on the line, and knowingly submitted patently false representations of fact to the Court. This was done in an effort to improperly cause unnecessary delay, to inflame (and mislead) the Court into granting relief that they were seeking, and to increase the plaintiffs' cost of litigation. The government attorneys have previously indicated, as part of a strong-arm settlement posture, that they will make litigation costly for the plaintiffs—knowing that they are destitute. While that is perhaps not a surprise, it reinforces the improper motive for their actions here.

The Court should impose sanctions. "An un-sanctioned bad faith misrepresentation carries with it the ability to destroy the Court's status as a hall of justice." *United States v. Price*, 2008 WL 5049295, at *4 (N.D. Tex. Nov. 25, 2008) (J. Boyle). At the very least, the Court should order the government attorneys to show cause why their conduct and representations did not violate Rule 11(b) or their obligations to the Court. In addition, the Court should order the government to pay attorneys' fees and costs incurred by plaintiffs and their counsel as a result of their improper conduct.


Respectfully submitted,

By: /s/ Jason Freeman
Jason B. Freeman
TX Bar # 24069736

Freeman Law, PLLC
2595 Dallas Parkway, Suite 420
Frisco, Texas 75034
Telephone: 214.984.3410
Fax: 214.984.3409
Jason@freemanlaw-pllc.com

**ATTORNEY FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of December, 2018, I have electronically filed the foregoing document with the Clerk of Court through the CM/ECF document filing system, which sent notification and copies of the filing to all counsel of record.

/s/ *Jason B. Freeman*
**Jason B. Freeman**

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1(a) and (h), I certify that I conferred with Curtis Smith and Moha Yepuri, counsel for the United States, on December 10, 2018 regarding this motion.  Initially Mr. Smith indicated that his office would not agree to correct the statements set forth in the motion above. His office subsequently called me back, acknowledging that several statements were indeed false, and indicated that they would change/correct several statements in a new filing.  However, they refused to affirmatively indicate to the Court that there was, in fact, no "eavesdropping" (Ms. Yepuri remained adamant) or that they had themselves made material misrepresentations of fact—they merely indicated they would change several of the statements that were obviously false in a new filing.  Counsel for the United States indicated that it is opposed to the relief sought herein.  Should the government adequately rectify the situation—which will require a full and truthful representation/acknowledgment of its wrongful acts, as well as disavowing and affirmatively removing improper attacks—undersigned counsel will withdraw this request for sanctions in full.

/s/ *Jason B. Freeman*
**Jason B. Freeman**