**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| TONY AND MII'S, INC. | § | |
| TONY THANGSONGCHAROEN, and | § | |
| SOMNUEK THANGSONGCHAROEN | § | Case No. 3:17-cv-609-B |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**JOINT SUBMISSION AS TO THE UNITED STATES' AMENDED EMERGENCY
MOTION FOR ENTRY OF PROTECTIVE ORDER [DKT. #43]**

In accordance with the Court's December 12, 2018 Order, Dkt. 45 (the "Order"), Plaintiffs Tony and Mii's, Inc., Tony Thangsongcharoen, and Somnuek Thangsongcharoen ("Tony and Mii's") and Defendant United States of America ("United States") file this Joint Submission on the United States' Amended Emergency Motion for Protective Order ("Amended Motion for Protective Order") [Dkt. #43]. The parties have submitted a separate joint submission that addresses their resolution as to Tony and Mii's Motion for Sanctions (the "Motion for Sanctions") [Dkt. #41].

On Wednesday, December 19, 2018, counsel for the parties met face-to-face at the offices of the Department of Justice, Tax Division, in Dallas, Texas. In attendance for Tony and Mii's was Jason B. Freeman. In attendance for the United States were Cynthia E. Messersmith, Andrew L. Sobotka, Curtis C. Smith, and Moha P. Yepuri. The conference began at 9:00 a.m. and concluded at approximately 10:00 a.m.

The parties were unable to resolve the United States' Amended Motion for Protective Order [Dkt. #43], but did resolve Tony and Mii's Motion for Sanctions [Dkt. # 41]. The parties' respective positions on the Motion for Protective Order are set forth below.

## THE UNITED STATES' PRELIMINARY STATEMENT

On Friday, December 7, 2018, the United States filed its Emergency Motion for Protective Order [Dkt. #38] seeking to (1) prevent the news media from attending pretrial depositions; and (2) obtain an Order from the Court confirming that the United States may produce its witnesses, including IRS witnesses, in offices of the United States. On Monday, December 10, 2018, Mr. Freeman filed Tony and Mii's Motion for Sanctions [Dkt. #41] seeking to have sanctions imposed against counsel for the United States, Curtis Smith and Moha P. Yepuri. Later that same day, on December 10, 2018, the United States filed its Amended Motion for Protective Order [Dkt. #], seeking the same relief as sought in its original motion but having removed all statements from the original motion that were the basis for Plaintiffs' Motion for Sanctions. On December 12, 2018, the Court ordered that counsel for the parties participate in a face-to-face conference in attempt to resolve the issues raised in both motions. [Dkts. # 41,43].

Discovery has been open and proceeding in this matter since March 9, 2018. December 4, 2018, marks the first date on which Plaintiffs' have provided notice of any media involvement in any discovery.

## TONY AND MII'S PRELIMINARY STATEMENT

The Plaintiffs do not object to the government's preliminary statement.

## THE UNITED STATES AMENDED MOTION FOR PROTECTIVE ORDER

A. **First Disputed Issue:** **Whether press or news media representatives may attend pretrial depositions in this lawsuit?**

### 1. The United States' Position

As a matter of general law and practice, a non-party to this lawsuit, has no legal right to be present while the deposition is being taken. As the Supreme Court has observed in a related setting: "pretrial depositions ... are not public components of a civil trial. Such proceedings were not open to the public at common law ... And, in general, they are conducted in private as a matter of common practice." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 104 S. Ct. 2199, 81 L.Ed.2d 17 (1984); *see also Amato v. City of Richmond*, 157 F.R.D. 26, 27 (E.D.Va.1994) (holding that "public policy and concerns for judicial economy strongly militate against allowing [the press] to attend the depositions."), *Kimberlin v. Quinlan*, 145 F.R.D. 1, 2, (D.D.C.1992) (holding that depositions are not open to the public and denying press attendance); *Times Newspapers Ltd. v. McDonnell Douglas Corp.*, 387 F. Supp. 189, 197 (C.D.Cal.1974) (holding that "neither the public nor representatives of the press have a right to be present" at the taking of a deposition); 8 Wright and Miller, Federal Practice and Procedure § 2041 (1992 Supp.); *Melendres v. Arpaio*, 2009 WL 3489402 (D. Ariz. 2009) (finding that the United States, as a non-party, had no right to attend a deposition, especially in light of the fact that it could obtain transcripts of the deposition).

Plaintiffs have invited Mr. Krause, a member of the media, to the IRS Revenue Officer's video deposition.  This will be the first time this IRS Revenue Officer has been deposed, and the threat of a member of the media attending, what is traditionally a closed and private proceeding, has caused the Revenue Officer to feel even more apprehensive and uncomfortable.

Aside from the added apprehension and discomfort this causes the Revenue Officer, Mr. Krause's attendance can serve no legitimate purpose.  Mr. Krause is not a party, not related to any party, and is not a witness.  As such, he has no interest in this matter apart from his interest as a member of the press.  Mr. Krause's presence may intimidate the Revenue Officer as well as

3

complicate the parties' ability to address any tax return information or other personal information that may come up during the questions and testimony.  This is inappropriate.  *See e.g.*, *Mangum v. Town of Holly Springs*, 2009 WL 10689440 (E.D.N.C. 2009) (finding that plaintiff had shown good cause for the exclusion from the deposition of an individual representative of a non-party where no plausible reason for the attendance of such representative was provided in the fact of plaintiff's contention that defendant was inflating attendance at her deposition for the purpose of intimidating her).

Additionally, the Revenue Officer will necessarily be providing pretrial deposition testimony regarding her knowledge of the Plaintiffs, their federal tax liabilities, and her actions taken regarding collection of their tax liabilities.  Intertwined throughout her testimony, the United States anticipates that she will be asked information that is subject to the privacy rules and restrictions of Section 6103.  26 U.S.C. § 6103.  Section 6103 states that no officer or employee of the United States shall disclose any return or return information obtained by him in any manner in connection with his service as such…  *Id*.  "Return" information is any tax return required to be filed under title 26.  *Id*.  While the rules of discovery and Section 6103 are compatible when the deposition is attended by the parties, their counsel and their experts, Section 6103 does not appear to contain exceptions for disclosure to the press when they happen to appear at places the Federal Rules of Civil Procedure did not contemplate – such as pretrial depositions.   Thus, if the press is present at the IRS Revenue Officer's deposition, the United States will have to instruct the IRS Revenue Officer to not answer any question that would elicit  an answer that includes any Section 6103 material, until further order of the Court.  *Id*.

Additionally, even if the presence of the news reporter at the invitation of the Plaintiffs were deemed to be a waiver of their Section 6103 rights, the scope of that waiver would remain

4

unclear and a potential source for additional disputes between the parties. In such case, the United States may be severely limited in its deposition examination of the IRS Revenue Officer because it is not clear how much of the Plaintiffs' additional Section 6103 tax return information it can elicit from her during such a deposition in front of the press without risking additional claims by the Plaintiffs for damages under Section 7431. 26 U.S.C. §§ 6103 and 7431. For example, the United States might want to ask the IRS Revenue Officer to lay an evidentiary foundation for whether or not the Plaintiffs have filed tax returns, and whether they reported any profits, in tax years subsequent the tax year for which collection activity took place as part of its defense to their claim for lost profits and economic damages. Additionally, the United States might want to ask the Revenue Officer to lay evidentiary foundation for other IRS documents that would tend to discredit the allegations of the Plaintiffs. Although Section 6103(h)(4) permits the disclosure of certain tax return information during judicial proceedings, it contains requirements that the information be directly related to the resolution of the case and have a transactional relationship to the case. These are elements that a judge can address during a trial or evidentiary hearing. However, that is not the case in an unsupervised deposition, and consequently the United States may be forced to limit or refrain from asking certain pretrial discovery questions that it would otherwise be able to ask in a normal deposition where the press was not invited. Additionally, Section 6103(c) permits disclosure of tax return information to persons who have been authorized by the "taxpayer" in writing. The waiver inserted in the Plaintiffs' portion of this submission below signed only by their attorney after the conference does not comply with requirement that the consent be signed by the taxpayers, or the Court's order.

Pursuant to the Order, Counsel for the United States provided printed copies of the cases cited above to counsel for Tony and Mii's during the face-to-face conference. Order at 2. The

United States believes that all of those authorities relied on by Plaintiffs are distinguishable from this type of case, and the general rule that depositions are not open the press.[1] Plaintiff has still not expressed any purpose for why the press needs to attend the video deposition, as opposed to simply being given a copy of the video deposition after its conclusion.

### 2. Tony and Mii's Position[2]

Federal Rule of Civil Procedure 26(c)(1)(e) places the burden on the party seeking to exclude people from a deposition to move for a protective order "designating the persons who may be present while the discovery is conducted." To meet this burden, the party must demonstrate and *prove* "good cause" that such an order is necessary to protect a party or person from "annoyance, embarrassment, oppression or undue burden or expense." The government has offered only conclusory, stereotyped claims in support of its motion—none of which are backed by a single proffer of evidentiary support, a fact that is fatal to its motion.

Under Fifth Circuit precedent, the government bears the burden to demonstrate particular and specific facts necessitating the protective order it seeks. That evidentiary burden is both a burden of production and persuasion. "With regard to a protective order, the 'burden is upon the

---

[1] The United States has obtained a declaration from the Revenue Officer setting forth her apprehension and anxiety over a news reporter being the deposition. The United States will provide it if the Court thinks one is necessary. However, it was not available or exchanged at the time the parties held their face to face conference and under the terms of this Court's order is not attached to this Joint Submission. Plaintiffs' counsel has noted his opposition to our supplementing this submission with such a declaration.

[2] With respect to footnote 1 of the government's position, the Court's Order clearly restricts the right of a party to submit evidence or arguments that it only seeks to garner days after the conference, and that never served as the basis for the relief it originally sought. The Court is well aware of existing case law that denies the right to attach new evidence through a reply brief, and that case law is directly analogous here, given that the government sought out supplemental evidence only after an extensive conference and reviewing Plaintiff's counsel's compelling legal arguments. This Court's joint filing procedure would become inequitable were the Court to allow such after-the-fact submissions that clearly violate the terms of the Court's Order.

movant to show the necessity of [a protective order's] issuance, which contemplates *a particular and specific demonstration of fact* as distinguished from stereotyped and conclusory statements.'" *U.S. ex rel. King v. Solvay S.A.*, No. CIV.A. H-06-2662, 2013 WL 820498, at *2 (S.D. Tex. Mar. 5, 2013) (quoting *In re Terra Int'l, Inc.,* 134 F.3d 302, 306 (5th Cir.1998)) (emphasis added); *United States v. Garrett*, 571 F.2d 1323, 1326 (5th Cir. 1978).

The government has offered no affidavits or evidence to support its assertions. It has, therefore, failed to put forward a "particular and specific demonstration of fact"—and has failed to do so as a matter of law. *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) ("MCC did not support its motion for protective order with any affidavits or other evidence that might provide support for this simple assertion. The district court's entry of the protective order requested by MCC was therefore unsupported by a 'particular and specific demonstration of fact' and therefore constituted a clear abuse of discretion.").

As does the statutory structure of Rule 26, the advisory committee's notes with respect to the 1993 amendments to Rule 30 implicitly recognize that the press or other persons may be in attendance at a deposition and that, as a general matter, the rules do not prohibit this. ("The revision addresses only the matter of attendance by potential deponents, and does not attempt to resolve issues concerning attendance by others, such as members of the public or press."). The Rule itself also expressly recognizes that non-party witnesses and potential deponents may attend a deposition. Fed. R. Civ. P. 30(c) (providing that Rule 615's exclusionary rule does not apply). *See also* Fed. R. Civ. P. 30, ¶ 15 (the Rule "provides that other witnesses are not automatically excluded from a deposition simply by the request of a party.").

The structure of the rule thus contemplates that non-parties can presumptively attend a deposition (at least where invited and they are not trespassing or forcing themselves upon the

proceeding), subject only to a party's demonstration of "good cause" under Rule 26(c)(1) in support of a motion for a protective order.  But Fifth Circuit case law, as cited above, is clear that in order to satisfy this standard the moving party must bring forward convincing evidence of "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."  And "[w]hen," as here, "a party moves for a protective order on the grounds of "embarrassment," the threatened harm must be particularly serious." *Carnaby v. City of Houston*, No. CIV.A.4:08-CV-1366, 2008 WL 4546606, at *1 (S.D. Tex. Oct. 10, 2008).  That standard is not met here.

Cases that the government cites, such as *Amato v. City of Richmond*, 157 F.R.D. 26, 27 (E.D.Va.1994), are distinguishable where they arise in the context of a non-party filing a motion to intervene or seeking a declaratory judgment that it has a legal right to insert itself into a deposition or other proceeding.  *See also Kimberlin v. Quinlan*, 145 F.R.D. 1, 2, (D.D.C.1992) (television network *filed a motion seeking permission to attend* a deposition, not governed by Rule 26(c)); *Times Newspapers Ltd. v. McDonnell Douglas Corp.*, 387 F. Supp. 189, 197 (C.D. Cal.1974) (Newspaper sought a declaratory judgment that its reporters had a legal right to attend "all depositions" and raising first amendment grounds); and *Melendres v. Arpaio*, 2009 WL 3489402 (D. Ariz. 2009) (did not involve press; and string cited to each of the cases listed above that have been cited by the government).[3]  Such a procedural posture presents a very different analytical framework and governing standard, and directly raises the substantive legal question of

---

[3] Notably, most of these cases cited by the government deal with the Federal Rules of Civil Procedure that existed prior to several subsequent amendments (and thus congressional enactments), none of which enacted a policy decision to exclude attendees in the situation presented here, which itself distinguishes these relatively old cases.

whether the press has an outright affirmative legal right to attend.  The plaintiffs make no such claim, and that question is not raised here.

In addition, the government relies upon *Seattle Times Co. v. Rinehart*, 467 U.S. 20 (1984), for the proposition that depositions were not public events at common law.  *Id.* at 33 (noting that depositions are "in general . . . conducted in private as a matter of modern practice.").[4]  That proposition, however, is largely irrelevant (in the particular context of the issue raised here) given that depositions are now a creature of statute.  Moreover, the civil rules of procedure at issue in that case were the procedural rules of the state of Washington, not the federal rules.  Thus, the court's background statements there were dicta and were made outside of the context at issue here.

*Seattle Times* addressed the issue—from an appellate perspective—of whether the state court's ruling granting a protective order that restricted pretrial dissemination of information violated the First Amendment.  It does not stand for, and does not purport to stand for, a rule that bars third parties (such as Mr. Krause) from attending a deposition when invited.  *Id.* at 37 ("It is sufficient for purposes of our decision that the highest court in the State found no abuse of discretion in the trial court's decision to issue a protective order pursuant to a constitutional state law. We therefore hold that where, as in this case, a protective order is entered *on a showing of good cause* as required by [State] Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment.") (emphasis added).

---

[4] These "general" norms of modern practice—to the extent they should have any bearing on the legal and procedural question presented here regarding whether the government has met its burden—are much less applicable in the context of a case such as this, where the allegations involve wrongdoing by public, government officials.  In that context, the perceived interest in privacy is lessened and the interest in transparency is heightened.  These factors may be relevant to the meaning of good cause in this context.

In short, *Seattle Times* simply does not address the question that is actually presented here: Has the government satisfied its burden under Rule 26(c) to put forward convincing evidence of "a particular and specific demonstration of fact [demonstrating 'good cause'] as distinguished from stereotyped and conclusory statements." The Court can dispose of this issue on procedural grounds, without addressing the implied and weightier substantive legal questions, by recognizing that the government has simply not satisfied this standard as it has been interpreted by the Fifth Circuit. *See In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).

Moreover, this is not a case of a third-party seeking to barge into a deposition or onto property where he is not welcome. The deposition is noticed at Freeman Law's office. Plaintiff's counsel welcomes Mr. Krause's attendance. Mr. Krause has expressly agreed to make no statements or utterances whatsoever during the deposition, a stipulation that minimizes any concern that his presence will result in "annoyance, embarrassment, [or] oppression." Plaintiff's counsel is willing to bear all responsibility, and to be held to account, for his actions. Given Mr. Krause's noted reputation for professionalism, plaintiff's counsel is quite sure there will be no issues.

The government has also raised superficial concerns over section 6103. It is purportedly concerned that the deponent or the government attorneys may make some inadvertent disclosure under section 6103 that could possibly violate one of the plaintiff's rights. The plaintiffs will make this issue simple: <u>Each of the plaintiffs hereby waives any and all rights to bring any action whatsoever on the basis of any disclosure or statement during the deposition. In other words, the plaintiffs are hereby waiving their right to recover, or even bring suit for, *any* violation whatsoever by the IRS or government attorneys during the deposition.</u>

In essence, the government has raised two primary arguments in an attempt to establish "good cause."  It has argued that the government official will "feel even more apprehensive and uncomfortable" (p. 3) and has raised a concern over inadvertent violations of section 6103.  The prior paragraph disposes of the section 6103 concern.   And the purported concern over apprehension and comfort merely indicates, by the government's own words, that the situation will cause the government witness to feel "even more" of something that the witness *already* feels— that is, Mr. Krause's presence is not the root cause of these purported feelings of apprehension. The lack of an affidavit or evidentiary submission on this score is dispositive, but even if it were not, the fact that the apprehension is simply additional or marginally increased subjective feelings of apprehension that are already present indicates that the government has failed to establish "good cause" for the relief that it seeks.[5]

B.   **Second Disputed Issue:  Whether the parties are entitled to present their own witnesses for depositions in the offices of the attorney who is presenting the witness to testify?**

### 1.   *The United States' Position*

It is a local custom in the Northern District of Texas to allow a deponent to be deposed at the offices of his or her attorney.  *EEOC v. Groom & Sons Hardware & Lumber, Inc.*, 3:02-cv-02076-D, Order at Dkt. #18; see also *Martinez v. Neiman Marcus Group, Inc.*, 3:05-CV-0422-P, 2005 WL 2179137, at *4 (N.D. Tex. Sept. 7, 2005) (accepting the argument of counsel that it is customary in litigation for depositions to occur in the office of the individual's counsel) and

---

[5] The statutory structure does not contemplate that the plaintiffs have a burden to set forth an express justification for, or their attorneys' mental work-product-privileged reasons for welcoming, Mr. Krause's attendance.   However, it is obvious that he brings a wealth of investigative resources and that, as a member of the press, he engages in a protected activity that serves a vital role in our society.   His presence is absolutely not intended to intimidate or oppress, a fact that is underscored by plaintiff's counsel's prior request that Mr. Krause agree not to speak during the deposition (a request that he immediately agreed to) in order to minimize any concern that his presence was for such purposes.

11

*Robinson v. Dallas County Community College District*, 3:14-CV-4187-D, 2016 WL 1273900, at

*1, 6 (N.D. Tex. Feb. 18, 2016) (Horan, Mag.) (ordering the defendant to produce its employee

for a deposition at the office of the defendant's counsel). While the United States was initially

willing to produce some of its employees for deposition at the offices of Plaintiffs' counsel, it is

no longer willing to produce them at that location if there is any risk that the Plaintiffs, or their

counsel, will be inviting or allowing news reporters to attend those depositions.

Pursuant to the Order, Counsel for the United States provided printed copies of the cases

cited above to counsel for Tony and Mii's during the face-to-face conference.  Order at 2.

### 2. Tony and Mii's Position

Both sides previously agreed to the locations of all of the depositions at issue, as well as to

the location of multiple other depositions.  The agreements were a two-way street.  Plaintiffs'

witnesses have been deposed at the government's offices.  In return for these

courtesies/agreements, the witnesses at issue were to be deposed at Freeman Law's offices.  The

government should not be allowed to now effectively break this agreement.

Moreover, only one deposition had the concerns at issue.  Plaintiff's counsel has assured

the government that there are no outstanding invitations for Mr. Krause (or other members of the

press) to attend any of the other depositions.  To the extent the government's initial filing could

have been read to indicate this, it has amended that filing to make clear that only one deposition

was even at issue.

Moreover, the government has, on multiple occasions, made substantial productions to

plaintiff's counsel one or two days prior to a government witness's deposition (generally of

documents specifically related to that deponent).  These productions have caused intensive last-

minute reviews and changes to planned deposition questions.  In fact, plaintiff's counsel's office

has, on several occasions, continued reviewing such productions while the deposition was ongoing to ensure that all new relevant documents were covered in the deposition.  The government is still in the process of disclosing substantial documents.  It thus greatly furthers the interests of efficiency and fairness to conduct such depositions at Freeman Law's office, where staff can assist with these last-minute reviews.  In light of these factors, and in light of the parties' prior mutual agreements, the Court should not move the previously-agreed-to locations of the depositions.

**C.  United States' Request for Relief on its Motion for Protective Order**

For the reasons stated above, the United States requests that its Amended Motion for Protective Order (ECF 43) be granted, and the Court order that any non-parties (other than counsel, experts and court reporters), including news media personnel, not be allowed to attend pretrial depositions, and that all depositions of IRS or United States Treasury personnel that are noticed for the offices of Mr. Freeman be amended by Order of the Court to occur at the offices of the United States, Department of Justice, Tax Division at 717 N. Harwood, Suite 400, Dallas, Texas 75201, or another office of the United States' choosing that complies with the limits of Rule 45(c) for government employees.

## CONCLUSION

The parties request that the Court determine the United States' Amended Motion for Protective Order (ECF 43).

13

/s/ Moha P. Yepuri_____
CURTIS C. SMITH
State Bar No.  AZ 026374
MOHA P. YEPURI
Texas State Bar No. 24046651
Trial Attorneys, Tax Division
U.S. Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9734/67
(214) 880-9741 (fax)
Curtis.C.Smith@usdoj.gov
Moha.P.Yepuri@usdoj.gov

ATTORNEYS FOR UNITED STATES


/s/Jason B. Freeman signed
with permission by Moha P.
Yepuri
JASON B. FREEMAN
Freeman Law, PLLC
2595 Dallas Parkway, Suite 20
Frisco, Texas 75034
Jason@freemanlaw-pllc.com

COUNSEL FOR PLAINTIFFS


CERTIFICATE OF SERVICE

I certify, that on December 21, 2018, I filed the foregoing using the Clerk's ECF system which will serve an electronic copy on the following:

Jason B. Freeman
Freeman Law, PLLC
2595 Dallas Parkway, Suite 420
Frisco, Texas 75034
Jason@freemanlaw-pllc.com
        Counsel for all Plaintiffs

 /s/ Moha P. Yepuri__
MOHA P. YEPURI

14